# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                No. CR 14-3272 JB

ALVIN CHARLEY,

     Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objection to Proposed Conditions of Supervised Release, filed April 16, 2015 (Doc. 29)("Objections"). The Court held a sentencing hearing on April 28, 2015. The primary issue is whether the Court may impose, as a condition to Defendant Alvin Charley's supervised release, continued payment toward the remaining balance of restitution owed in a different criminal matter, United States v. Charley, No. CR 10-1732 JB. The Court concludes that such continued restitution payment in a different criminal matter is a valid condition of supervised release. The Court will thus overrule Charley's Objections and impose the condition.

## FACTUAL BACKGROUND

In a Plea Agreement, filed January 28, 2015 (Doc. 26)("Plea Agreement"), Charley admitted the following facts:

> On the evening of August 15, 2014, at 95 Lobo Valley Road, Pinedale, New Mexico which is within the exterior boundaries of the Navajo Nation, Alvin Charley began yelling at John Doe. John Doe, who was standing in front of his home, just 133 feet from Charley's residence, responded for Alvin Charley to bring it on. Both men had been drinking alcohol. Alvin Charley believed that John Doe owed him for the time he spent in jail. John Doe responded that Alvin Charley owed him for stabbing him on a previous occasion. Alvin Charley walked from his house to John Doe's house as family members tried to

keep them apart.  Alvin Charley had a knife in his right hand.  The two men began fighting.  Alvin Charley and John Doe fell to the ground.  When they got off the ground, blood was seen coming from John Doe's chest.  The fight continued around to the northern side of John Doe's house. Family members continued to try and separate Alvin Charley and John Doe.  Alvin Charley walked off.  Family members helped John Doe into a car.  John Doe said that he was hot and needed to get out.  He was removed and lay on the ground next to the car, where he died.   On August 17, 2014, the Office of Medical Investigators autopsy of John Doe showed that he died from a single stab wound to his chest (left).  The stab wound hit his lung, and nicked the pericardium sack, which the heart sits in.  Approximately 1,500 ml of blood was removed from his chest cavity.  Alvin Charley and John Doe are registered members of the Navajo Indian Tribe.

Plea Agreement ¶ 6, at 3-4.  The John Doe in the plea agreement is a victim named Leo Cayaditto.  See Presentence Investigation Report ¶ 11, at 3, disclosed April 7, 2015 ("PSR").

Additionally, before the present criminal conduct, on December 7, 2010, Charley pleaded guilty -- in criminal matter United States v. Charley, No. CR 10-1732 JB -- to:

On or about May 12, 2010, I stabbed Leo Cayaditto in the chest and right side of his abdomen with a knife.  As a result of my actions, Mr. Cayaditto suffered injuries that were life threatening and caused him extreme physical pain.  I further admit that, in stabbing Mr. Cayaditto, I was not exercising lawful self-defense because the force I used was in excess of that reasonably necessary under the circumstances.  The stabbing occurred in Pindale, New Mexico, on land that was within the exterior boundaries of the Navajo Nation.  I am an enrolled member of the Navajo Nation and am "Indian" as defined by federal law.

United States v. Charley, No. CR 10-1732 JB, Plea Agreement, filed December 7, 2010 (Doc. 24).  Pursuant to that Plea Agreement, the Court sentenced Charley to 18 months incarceration and ordered Charley pay $12,742.69 in restitution to the New Mexico Human Services Department (Medicaid).   See PSR ¶ 57, at 10.   "A total of $12,642.69 remains owed in restitution."  PSR ¶ 57, at 10.

**PROCEDURAL BACKGROUND**

On September 23, 2014, Charley was charged by a grand jury with: "On or about August 15, 2014, in Indian Country, in McKinley County, in the District of New Mexico,

the defendant . . . an Indian, with malice aforethought, did unlawfully kill John Doe by stabbing him.   In violation of 18 U.S.C. §§ 1153 and 1111."   Indictment at 1, filed September 23, 2014 (Doc. 14).  On January 18, 2015, an Information was filed charging Charley with Voluntary Manslaughter, in violation of 18 U.S.C. §§ 1112(a) and 1153, occurring on August 15, 2014, in McKinley County.  See Information at 1, filed January 28, 2015 (Doc. 23). On January 28, 2015, Charley pled guilty to the Information.  See Plea Agreement ¶ 6, at 3-4. Charley "entered into a written plea agreement pursuant to Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure stipulating to a specific sentence of 120 months."  PSR ¶ 5, at 3.  The PSR provides that the "defendant agrees that, as part of the defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. 3663A." PSR ¶ 6, at 3.  Charley agrees to "waive all rights conferred by 18 U.S.C. § 3742."  PSR ¶ 7, at 3.

In the PSR, the United States Probation Office ("USPO") calculated Charley's base offense level at 29, under U.S.S.G. § 2A1.3.  See PSR ¶ 43, at 8.  The PSR notes a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for accepting responsibility and a 1-level reduction pursuant to U.S.S.G. § 3E1.1(b) for timely notifying authorities of an intention to enter a guilty plea.  See PSR ¶¶ 50-51, at 8.  The PSR notes that Charley's total offense level is 26.  See PSR ¶ 52, at 8.  Based on prior convictions for battery, person under the influence of intoxication liquor or drugs, no driver's license, and assault resulting in serious bodily injury, the PSR calculates a criminal history score of 3, which results in a criminal history category of II.  See PSR ¶¶ 54-59, at 9-12.  The PSR notes that the Guidelines imprisonment range for an offense level of 26 and a criminal history category of II is 70 to 87 months.  See PSR ¶ 121, at 22.  The PSR also notes that it does not appear as though Charley has the ability to pay any fine.  See PSR ¶ 119, at 22.  In addition to other mandatory, standard, and special conditions of supervised

release, the PSR also recommends, as a special condition, that Charley "continue to make payments towards the remaining balance of restitution owed in Case No.: 1:10CR001732-001 JB."   Attachment A to the Presentence Investigation Report, disclosed April 7, 2015 ("Conditions of Supervised Release").

Charley makes two objections to the PSR.  First, Charley objects to the "conditions that he must, as condition of his Supervised Release, and under penalty of incarceration . . . 'continue to make payments towards the remaining balance of restitution owed in Case No.: 1:10CR001732-001 JB.'"  Objections at 1 (citing Conditions of Supervised Release).  In support of the Objection, Charley argues that "the Court does not have the authority under the Mandatory Victim's Restitution Act[1] to make the prior restitution order a condition of Supervised Release in the instant case."  Objections ¶ 7, at 3.  Charley contends that the Court lacks authority to impose the condition because, "upon termination of his last Supervised Release term, the prior restitution order became a civil judgment against Mr. Charley with no greater priority than his other debt."  Objections ¶ 7, at 3.  Accordingly, "while 18 U.S.C. § 3664 allows for a wide range of enforcement options, it does not provide authority for the Court to order it as a condition of Supervised Release with the threat of incarceration and making it a higher priority than other debt in a subsequent case."  Objections ¶ 7, at 3.

In addition, according to Charley, 18 U.S.C. § 3563(b)(2) authorizes the Court only to "enter a discretionary condition of Supervised Release[] that requires as a condition of Supervised Release that the defendant make restitution to the instant victim or his family arising from current offense."  Objections ¶ 8, at 3.  In turn, Charley argues,

> it would appear that 18 U.S.C. § 3664(k) would require a defendant to inform the Court and the Attorney General of any material changes [in] economic

---

[1] 18 U.S.C. § 3663A.

circumstances.  Thus, an inquiry into the defendant's finances during his term of Supervised Release appears to be appropriate.  However, the prohibition upon incurring new credit charges or opening new lines of credit is not listed as a discretionary condition of Supervised Release pursuant to 18 U.S.C. § 3563(b)(2).

Objections ¶ 8, at 3-4.  Charley's argument, then, is essentially that the Court "does not have the authority to order as a condition . . . an outstanding debt in an old case . . . nor can the Court prioritize Mr. Charley's creditors with some being able to use the fear of incarceration to collect its debt."  Objections ¶ 9, at 4.

Second, Charley objects to the "imposition of any fine."  Objections at 1.  In support of that Objection, Charley primarily argues that he lacks the "resources" and "employment prospects" to service such a fine.  Objections ¶ 13, at 5.  Essentially, Charley argues "a court cannot constitutionally imprison a defendant for a debt he is unable to pay."  Objections ¶ 13, at 5.  Further, Charley notes that the PSR provides that it does not appear as though Charley has the ability to pay any fines.  See PSR ¶ 119, at 22.

The USPO disclosed two addenda to the PSR.  The USPO's Second Addendum to the Presentence Report, disclosed June 26, 2015 ("Second Addendum"), addresses an issue involving Medicaid restitution, which is not related to the present dispute.  In the first Addendum to the Presentence Report, disclosed April 27, 2015 ("First Addendum"), however, the USPO responds to Charley's Objections to the Conditions of Supervised Release and to the possible imposition of a fine.  See First Addendum at 1.  The First Addendum provides that, "[p]ursuant to 18 U.S.C. 3583(d), a federal court may impose, as a condition of supervised release, any condition set forth as discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate."  First Addendum at 1 (internal quotation marks omitted).  The First Addendum asserts that, so long as the condition is "reasonably related to the

factors set forth in section 3553(a)(1) and (a)(2)," the condition is valid.  First Addendum at 1.

The USPO provides:

> In considering 18 U.S.C. 3553 factors, the probation office notes the defendant was previously on supervised release for stabbing the same victim and fell behind on restitution payments.  When his term of supervised release was revoked, he had not fulfilled his outstanding restitution obligation.  In light of the similarity of charges to the instant offense and the defendant's nonpayment of restitution for his prior federal conviction, the probation office believed the outstanding restitution is reasonably related to the instant offense.  Further, the [USPO] is not recommending a new sentence of restitution be imposed that incorporates the outstanding restitution debt.  Rather, the probation office recommends imposition of a condition of supervised release that directs the defendant to pay the outstanding restitution.

First Addendum at 1.  The First Addendum then, with respect to imposition of a fine, maintains what the PSR states -- that Charley "does not have the ability to pay a fine."  First Addendum at 1.

The Court held a sentencing hearing on July 8, 2014.  See Transcript of Hearing (taken July 8, 2014)("Tr.").[2]  At the hearing, Charley first made "sure it's clear to the Court that we would object to any fine but as to the guidelines calculations and material statements in the presentence report we have no objection."  Tr. at 2:19-23 (Butcher).  The Court then turned argument to Charley's Objections to the Conditions of Release.  See Tr. at 4:15-17 (Court).  The Court explained that it had reviewed case law from the United States Court of Appeals for the Fifth Circuit, a case called United States v. Love, 431 F.3d 477 (5th Cir. 2005), which said

> the single narrow issue in this case is whether a court can impose as a condition of supervised release that the defendant pay the unpaid restitution ordered as part of a sentence by another Federal Court in another federal case.  And they held that in that case the Court could do it in the second case.

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

Tr. at 5:11-17 (Court).  The Court noted, however, that, in that Fifth Circuit case, "the supervised release in the first case was still ongoing . . . so it is distinguishable at least on that point."  Tr. at 5:20-23 (Court).  The Court next described a United States Court of Appeals for the Second Circuit case, called United States v. Gill, 523 F.3d. 107 (2d Cir. 2008), which cites United States v. Love and holds that there was no error in the district court's imposition of a condition of release of making continued restitution payments in another case.  See Tr. at 6:3-8:14 (Court).

Charley disagreed with the Court, stating that "how I read 3563(B)(2) is that a condition of supervision [is] a condition of supervision [in] the instant case[;] the Court can order the payment of restitution as a condition.  And I think that's specifically listed in the discretionary conditions that Congress put in the statute."  Tr. at 8:15-25 (Butcher).  Charley argued Congress "didn't make what the Court wants to do possible."  Tr. at 12:1-4 (Butcher). In fact, Charley argued, Congress instead created a "litigation unit in the United States Attorneys' Office" that is aimed at collecting the debt owed as restitution in the other case -- that is, Congress chose to address uncollected restitution debt in a different, comprehensive manner.  See Tr. at 12:15-13:4 (Butcher).  Additionally, Charley asserted,

> more interesting, what has not been argued, even if the Court does have discretion to do this, what I've not heard from the probation office is how this relates to a 3553 factor, which all conditions of supervised release must do.  Other than saying it's the same victim and same defendant.

Tr. at 14:3-10 (Butcher).  Charley concluded by noting that Congress has "specifically dealt with" this situation

> when they created the financial litigation unit, and you noticed this turn[ed] into a civil debt and given this financial litigation unit all the civil tools to enforce it.  I would say that's a comprehensive scheme that no longer gives this Court its discretion to impose this [as] a condition of supervised release.  And more importantly, it does not fit into any 3553(a) factors. . . .

Tr. at 17:1-14 (Butcher).

The United States disagreed with Charley, providing that "the Court can and should include [the condition] as a discretionary factor in the defendant's . . . sentencing. . . ." Tr. at 17:20-25 (Ramirez).  The United States argued: "[I]t is related [to the] 3553 factors in that it demonstrates the history and characteristics of this defendant . . . this defendant in particular with this victim . . . ." Tr. at 18:9-19 (Ramirez).  Charley then resumed argument and maintained that "as a matter of discretion the Court shouldn't" impose a condition of supervised release to continue payment toward restitution in an unrelated matter. Tr. at 25:8-12 (Butcher).  The Court indicated that on the issue of

> whether I can do it, I think if I were to go the defendant's way, I would be splitting with the Fifth and Second Circuit.  And I think based on the Fifth and Second Circuit decisions, and also 3614, which says you can imprison[] defendants for failure to pay restitution . . . I just don't see a good reason why I should break with the Second and Fifth Circuits.

Tr. 27:1-10 (Court).  Further, "these crimes are . . . about as related as crimes get when you have two of them.  And so I think whatever payment in the prior case is [it is] reasonably related to this offense."  Tr. at 27:11-15 (Court).  The Court accordingly imposed as a condition of supervised release the continued payment of restitution in the related matter, but did not impose a fine.  See Tr. at 39:5-10; id. 40:2-3 (Court).

## RELEVANT LAW REGARDING THE SENTENCING GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976 (the "Act"), thus making Guidelines sentencing ranges effectively advisory. In excising the two sections, the Supreme Court left the remainder of the Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide

sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in § 3553(a)(2):

> **(A)**  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)**  to afford adequate deterrence to criminal conduct;
>
> **(C)**  to protect the public from further crimes of the defendant; and
>
> **(D)**  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the offense's nature and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill statutory mandate."); United States v.

Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. 338, 349 (2007), as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008).  This presumption, however, is an appellate presumption and not one that the trial court can or should apply.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007).  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[3] Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

---

[3]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the Guideline ranges are advisory.  Gall v. United States, 522 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory [.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the Guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the

extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . . "). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

> . . . .

> The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. 85, 101 (2007)(alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence.   Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.   The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, 2008 WL 2229550, at *6 (D.N.M. 2008)(Browning, J.).   The

Supreme Court recognized, however, that the sentencing judge is "in a superior position to find

facts and judge their import under § 3553(a) in each particular case."   Kimbrough v. United

States, 552 U.S. at 89.   Applying § 3553(a)'s factors, the Court has found that the case of an

illegal immigrant who re-enters the United States to provide for his two children and two siblings

was not materially differentiated from other re-entry cases, and, thus, no variance from the

Guidelines sentence was warranted.   See United States v. Alemendares-Soto, 2010 WL

5476767, at *12 (D.N.M. 2010)(Browning, J.).   On the other hand, in United States v. Jager,

2011 WL 831279 (D.N.M. 2011)(Browning, J.), although the defendant's military service was

not present to an unusual degree and, thus, did not warrant a departure, the Court found that a

variance was appropriate, because the defendant's military service was "superior and uniformly

outstanding," as the defendant appeared to have been "trustworthy[] and dedicated, and he

served with distinction."   2011 WL 831279, at *14.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the

principle that it is permissible for sentencing judges "to exercise discretion -- taking into

---

United States v. Nolf, 2014 WL 3377695, at *20-21 (D.N.M. 2014)(Browning, J.)(emphasis in original).

consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481.  The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis, citations, and internal quotations omitted).  In United States v. Booker, the Supreme Court held that, because the sentencing guidelines are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013).  See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges -- the statute falls outside the scope of Apprendi's requirement."  (alterations and internal quotations omitted)).  The Supreme Court has recently held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence. See Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013).

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker had not changed the district court's enhancement-findings analysis. See United States v. Magallanez, 408 F.3d at 684-85.  United

States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant, Magallanez, guilty of conspiracy to possess with intent to distribute and to distribute methamphetamine.  See 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50-500 grams of methamphetamine; at sentencing, however, the judge -- based on testimony of the various amounts that government witnesses indicated they had sold to the defendant -- attributed 1200 grams of methamphetamine to the defendant and used that amount to increase his sentence under the Guidelines.  See 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months to 121 to 151 months.  See 408 F.3d at 682-83.  The Tenth Circuit stated that, both before and after Congress' passage of the Sentencing Reform Act, "sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  408 F.3d at 684.  Although United States v. Booker made the Guidelines ranges effectively advisory, the Tenth Circuit in United States v. Magallanez reaffirmed that "district courts are still required to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before."  408 F.3d at 685 (citation omitted).

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance."  United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[4]  "[T]he application of an enhancement . . . does not implicate

---

[4]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since classified its holding as leaving "open the possibility that due process may

the Supreme Court's holding in Apprendi v. New Jersey." United States v. Reyes-Vencomo, 2012 WL 2574810, at *3 (D.N.M. 2012)(Browning, J.). The Tenth Circuit applies Apprendi v. New Jersey's requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." United States v. Price, 400 F.3d 844, 847 (10th Cir. 2005). Accord United States v. Ray, 704 F.3d at 1314. A defendant may assert an error under Apprendi v. New Jersey only where the fact at issue increased his sentence beyond the statutory maximum. See United States v. O'Flanagan, 339 F.3d 1229, 1232 (10th Cir. 2003)(holding that a defendant could not assert an error under Apprendi v. New Jersey, because "his sentence does not exceed the statutory maximum"); United States v. Hendrickson, 2014 WL 6679446, at *6 (10th Cir.

---

require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105). See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)). The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence. United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation). See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (holding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).

2014)(unpublished)[5](holding that, after <u>Alleyne v. United States</u>, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence"). As the Court has noted:

> The Court explained that, although the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u>, . . . 133 S. Ct. 2151 . . . (2013), expands the rule from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 . . . (2000)(holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that increase the mandatory minimum sentence, as well as the maximum sentence, it does not prohibit district judges from continuing to find advisory sentencing factors by a preponderance of the evidence. <u>See</u> [<u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,] 2014 WL 4347131, at *22-26 [(D.N.M. Aug. 29, 2014)(Browning, J.)].

<u>United States v. Cervantes-Chavez</u>, 2014 WL 6065657, at *14 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, cmt. 1(H). In <u>United States v. Booker</u>, the Supreme Court noted:

---

[5]<u>United States v. Hendrickson</u> is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that <u>United States v. Hendrickson</u>, <u>United States v. Schmidt</u>, 353 F. App'x 132 (10th Cir. 2009)(unpublished), and <u>United States v. Banda</u>, 168 F. App'x 284 (10th Cir. 2006)(unpublished), all have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the <u>real conduct</u> that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)).  The Supreme Court's

reasoning in <u>United States v. Booker</u> "suggests that the consideration of real conduct is necessary

to effectuate Congress' purpose in enacting the guidelines."  <u>United States v. Reyes-Vencomo</u>,

2012 WL 2574810, at *5 (D.N.M. 2012)(Browning, J.).

Section 1B1.3 provides that the base offense level under the Guidelines "shall be

determined" based on the following:

**(1)** **(A)** all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

**(B)** in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

**(2)** solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

**(3)** all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

**(4)** any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The Court may consider, as relevant conduct, actions that have not resulted in a conviction.  Pursuant to the commentary to U.S.S.G. § 6A1.3, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning J.). Accord United States v. Schmidt, 353 F. App'x 132, 135 (10th Cir. 2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").  The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct comes primarily from two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997).  In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge.  The defendant in Witte v. United States had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine into the United States, and in a 1991 attempt to import marijuana.  See 515 U.S. at 392-93.  In March, 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics.  See 515 U.S. at 392-93.  At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and therefore calculated the defendant's base

offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes.  See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with the 1990 activities.  See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, arguing that he had already been punished for the cocaine offenses, because the district court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense.  See 515 U.S. at 395.  The district court agreed with the defendant and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments, which the Double Jeopardy Clause of the Fifth Amendment to the Constitution provides.  See 515 U.S. at 395.  The United States Court of Appeals for the Fifth Circuit reversed the district court and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals, including the Tenth Circuit, that had previously considered this question.  See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit.  See 515 U.S. at 395.  In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."  515 U.S. at 401.  The Supreme Court reasoned that

sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."  515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States' holding and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted.  See 519 U.S. at 149.  In reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the United States Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence.  See 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).  The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.  See United States v. Watts, 519 U.S. at 151.  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines

did not alter this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit case law adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Double Jeopardy Clause of the Fifth Amendment).   In United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x at 290.  The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"  168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug-trafficking crime.  See 947 F.2d at 1428.  The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal of firearms charges.  See 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense.");

United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof which a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing Coleman's sentence for possession of a firearm.   See United States v. Coleman, 947 F.2d at 1429.  The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved.   See 947 F.2d at 1429.  The Tenth Circuit summarized that, in reviewing federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." 947 F.2d at 1429.

In United States v. Washington, 11 F.3d 1510 (10th Cir. 1993), the defendant, Patrick Washington, argued that the United States should prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence rather than by a preponderance of the evidence.   See 11 F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life.   See 11 F.3d at 1515.  The defendant argued that "because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required."   11 F.3d at 1515.   Although the Tenth Circuit in United States v. Washington

"recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard."  11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)).  See United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (D.N.M. 2014)(Browning, J.)(ruling that a sentencing court can cross reference from the guidelines that correspond to the defendant's crime of conviction to the guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 2014 WL 6065657, at *14-15 (cross referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court has previously held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal.  See United States v. Goree, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.).  The Court has also determined that, although it could consider the defendant's silence about information regarding herself or others engaging criminal conduct, it would not rely on that silence to increase the defendant's sentence.  See United States v. Chapman, 2012 WL 257814, at *13 n.5 (D.N.M. 2012)(Browning, J.).  Finally, the Court has concluded that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence.  United States v. Romero, 2012 WL 6632493, at *23 (D.N.M. 2012)(Browning, J.).

## LAW REGARDING SUPERVISED RELEASE

A district court's decision making with regard to violations of supervised release conditions comes in two phases.  First, at sentencing, the court must decide whether to impose a term of supervised release and, if so, how long a term to impose and what conditions to associate with it.  Second, while the defendant is on supervised release, if the United States accuses the defendant of violating a condition of supervised release, the Court must determine whether the defendant has violated the conditions, whether to revoke supervised release, and, if so, what disposition to impose for the violation.  See United States v. Lee, 147 F. Supp. 3d 1253 (D.N.M. 2015)(Browning, J.), aff'd by 650 Fed. App'x 948 (10th Cir. 2016)(holding that the district court did not error by considering the need for a sentence to reflect the seriousness of the offense -- a sentencing factor not expressly cross-referenced in the revocation sentencing statute).[6]

---

[6]In United States v. Thompson, 2015 WL 151609 (7th Cir. 2015)(Posner, J.), the Honorable Richard Posner, United States Court Judge of the United States Court of Appeals for the Seventh Circuit, criticizes the manner in which district courts regularly impose conditions of supervised release.  Judge Posner asserts, among other things, that: (i) defendants often are not given advance notice of the conditions of supervised release that a judge is thinking about imposing; and (ii) many judges fail to explain their reasoning for imposing conditions of supervised release, and do not apply the eight 18 U.S.C. § 3553(a) factors, referenced in § 3583(c), to proposed conditions.  See 2015 WL 151609, at *2-4.

In the District of New Mexico, the USPO prepares and delivers a Bruce Memo, named after the United States Court of Appeals for the Tenth Circuit's case of United States v. Bruce, 458 F.3d 1157 (10th Cir. 2006)(Murphy, J.), before sentencing and before violations hearings.  The Bruce Memo lists all conditions -- mandatory, standard, and special -- that the Court is thinking of imposing, so the parties know in advance what the Court is considering and can prepare.

If Judge Posner is at war with supervised release overall -- and does not think federal courts should be imposing them at all -- the Court may share some of his concerns.  The Court believes that much of what is done on supervised release is law enforcement work and detracts from the federal courts' primary function of adjudicating cases.  The Court is often put in the position of talking to probation officers outside the presence of parties, receiving information about the defendant, approving petitions, and then presiding as judge.  Whether a defendant is using alcohol or where the defendant is living or working -- after he or she has been released from prison -- could be supervised by the Bureau of Prisons just as well or better than this Court, and parole officers are correctional officers in many states, including in New Mexico.

1.     **Imposition of Supervised Release**.

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may [and sometimes must] include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(a). As part of a defendant's supervised release, he is legally bound to abide by certain conditions of his release.  See 18 U.S.C. § 3583(d).  Section 3583 of Title 18 of the United States Code lists

---

Supervision of a long criminal docket like in New Mexico is extremely time-and-resource consuming, and takes time from traditional judicial functions -- like deciding new cases -- and requires judges to monitor conditions of supervised release sometimes imposed years or decades earlier.  Nevertheless, supervised release remains immensely popular in the political branches, and Congress generously funds the U.S. Probation Office and its work.  See ADMINISTRATIVE OFFICE OF THE U.S. COURTS, FEDERAL CORRECTIONS AND SUPERVISION DIVISION, THE U.S. PROBATION AND PRETRIAL SERVICES SYSTEM 1 (2001), www.ilnpt.uscourts.gov/Probation_and_Pretrial_System.pdf.  As long as Congress and the political branch want the service, the Court must defer to the political branches' expression of the popular will and faithfully perform its delegated function.  Thus, Judge Posner's war on supervised release must be tempered with the recognition that Congress wants district courts to supervise defendants.  And he cannot make it unworkable.  The sentencing cannot become a negotiation process that produces a contract resembling one between Microsoft and a software user, with every word defined.  While the Court often revises the conditions to make them clearer and tailored to the case, the defendant and counsel have to help spot problems; it remains an adversarial process, and the Court has to rely on the attorneys telling it what could be a problem in the particular case before the Court.

The District and the Court already follow some of Judge Posner's directives, but when parties know in advance what the Court is thinking, and do not object to the wording of a condition, it is an undue burden for the Court to independently review each condition and justify on the record each condition -- mandatory and standard -- on the record at the hearing.  If the Court discloses in advance all conditions and justifies on the record each special condition, that careful approval is enough to satisfy Tenth Circuit law and should be enough to satisfy any notion of basic fairness to the defendant, without making the sentencing hearing unduly long or complicated.  See United States v. Bruce, 458 F.3d at 1166-69 (holding that pre-hearing "notice of a special condition is required only where the condition 'implicate[s] a liberty interest, and there [is] a lack of any obvious nexus between the condition and the crime of conviction'"); United States v. Martinez-Torres, 795 F.3d 1233, 1237-38 (10th Cir. 2015)(Hartz, J.)(holding that, before imposing a special condition, the district court must make an individualized assessment and explain why it is imposing the condition with a statement of "generalized reasons").

some of the standard and discretionary conditions that courts shall and may impose as part of supervised release:

> **Conditions of supervised release.** -- The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance.  The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant.  The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act.  The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000.  The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.  The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4).  The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test.  A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy.  The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test.  The court may order, as a further condition of supervised release, to the extent that such condition--
>
> > **(1)**     is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

**(2)**     involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

**(3)**     is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

Thus, § 3583 specifies standard and discretionary conditions of supervised release, while elsewhere Congress has provided for other conduct which, if committed by a defendant on supervised release, can result in a revocation of supervised release. Among others, § 3583 provides that the defendant not commit another federal, state, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample. See 18 U.S.C. § 3583(d). Further, § 3583 permits a court to craft special conditions of supervised release that it deems appropriate. See 18 U.S.C. § 3583(d). Among those conditions not listed in § 3583 is that supervised release may be revoked if the defendant fails to pay a fine or restitution that the court has imposed. See 18 U.S.C. § 3613A ("Upon a finding that the defendant is in default on a payment of a fine or

restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").

In "determining whether to include a term of supervised release, and if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release," the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C. § 3583(c).[7]

### 2.   Revocation of Supervised Release.

Subsection (e)(3) of § 3583 sets forth the process for revoking supervised release:

(e)     **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

(3)     revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a

---

[7]The Court will discuss these eight specific § 3553(a) factors in the next two sections, which focus on a district court's re-imprisonment of a defendant following revocation of a term of supervised release under § 3583(e).  A district court must consider these same eight factors in both contexts.  It should be noted that 18 U.S.C. § 3583(c) omits § 3553(a)(2)(A) -- which requires a district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense -- as one of the factors to be considered in determining whether to include a term of supervised release . . . the length of the term and the conditions of the supervised release."  Judge Posner of the Seventh Circuit has recently observed regarding this omission: "From the omission of subsection 3553(a)(2)(A), the court in United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012), inferred 'that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment.'"  United States v. Thompson, 2015 WL 151609, at * 2 (7th Cir. 2015)(Posner, J.).  The Court agrees with that general observation and goal.

> defendant whose term is revoked under this paragraph may
> not be required to serve on any such revocation more than 5
> years in prison if the offense that resulted in the term of
> supervised release is a class A felony, more than 3 years in
> prison if such offense is a class B felony, more than 2 years
> in prison if such offense is a class C or D felony, or more
> than one year in any other case . . . .

18 U.S.C. § 3583(e). Further, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(h). See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorized district courts to order terms of supervised release following reimprisonment). The court must find all violations of supervised release by a preponderance of the evidence, regardless whether the violative conduct itself constitutes criminal conduct. See 18 U.S.C. § 3583(e). This standard is different from the ones that apply to a defendant's violation of supervised release conditions pending trial -- mere probable cause for criminal violations, and the clear-and-convincing standard for noncriminal violations. See 18 U.S.C. § 3148(b)(1).

### 3.     Sentencing Following the Revocation of Supervised Release.

Consistent with § 3583(e)(2), the Tenth Circuit has explained: "When a convicted defendant violates a condition of supervised release, the sentencing judge may revoke the term of supervised release and impose prison time." United States v. Patton, 506 F. App'x 729, 731 (10th Cir. 2012)(Brorby, J.)(quoting United States v. Vigil, 696 F.3d 997, 1002 (10th Cir. 2012)(O'Brien, J.)(citing 18 U.S.C. § 3584(e))).[8] In doing so, "[t]he judge must consider

---

[8]As described in the preceding section, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after

[certain] factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the Sentencing Guidelines."   United States v. Patton, 506 F. App'x 729, 731 (10th Cir. 2012)(Brorby, J.)(brackets in original).  See 18 U.S.C. § 3583(e).  The relevant portion of 18 U.S.C. § 3583(e) concerning revocation of supervised release provides that "[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release."  18 U.S.C. § 3583(e).  The eight relevant § 3553(a) factors are as follows:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed --
>
> > . . . .
> >
> > **(B)** to afford adequate deterrence to criminal conduct;
> >
> > **(C)** to protect the public from further crimes of the defendant; and
> >
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> **(4)** the kinds of sentence and the sentencing range established for --
>
> > . . . .
> >
> > **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing

---

imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorized district courts to order terms of supervised release following reimprisonment).  When a defendant violates conditions of his supervised release, therefore, he can be sentenced to imprisonment followed by further supervised release.

Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28;

**(5)** any pertinent policy statement --

> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  See United States v. Patton, 506 F. App'x at 731 n.2 (explaining that 18 U.S.C. § 3583(e) lists the § 3553(a) factors to be considered).[9]

---

[9]"Section 3583(e) does not list Section 3553(a)(2)(A) among the factors district courts should consider in modifying or revoking supervised release."  United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)(Baldock, J.).  The omitted section, § 3553(a)(2)(A), provides that, in determining the sentence to be imposed, the district court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  The Supreme Court has not addressed whether a district court's consideration of a § 3553(a)(2)(A) factor during revocation sentencing is error.  See United States v. Miller, 608 Fed. App'x 707, 709 (10th Cir. 2015)(Baldock, J.).

The Circuits are split on the question.  See United States v. Chatburn, 505 Fed. App'x 713, 717 (10th Cir. 2012)(Matheson, Jr., J.).  The United States Courts of Appeals for the First, Second, Third, Sixth, and Seventh Circuits have concluded that it is not error to consider § 3553(a)(2)(A) factors during revocation sentencing.  See e.g., United States v. Clay, 752 F.3d 1106, 1108-09 (7th Cir. 2014)(Flaum, J.); United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011)(Selya, J.); United States v. Young, 634 F.3d 233, 239 (3d Cir. 2011)(Vanaskie, J.); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007)(McKeague, J.); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006)(Kearse, J.).  The United States Court of Appeals for the Fifth and Ninth Circuits, by contrast, have concluded that it is error.  See United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011)(Garza, J.); United States v. Miqbel, 444 F.3d 1173,

_____

1182 (9th Cir. 2006)(Reinhardt, J.).  The United States Courts of Appeals for the Fourth Circuit initially joined the Fifth and Ninth Circuits, holding that, "[a]ccording to § 3553(a)(2)(A), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense.'"  United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006)(Shedd, J.).  Recently, however, the Fourth Circuit limited United States v. Crudup in United States v. Webb:

> A district court's meaningful consideration of the enumerated § 3553(a) factors when imposing a revocation sentence typically will include analysis that furthers the purposes of post-revocation incarceration.  Given that the § 3553(a)(2)(A) factors are closely related to the factors district courts are instructed to consider under § 3583(e), we fail to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically render a sentence unreasonable.  Accordingly, although a district court may not impose a revocation sentence based predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment, we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors.

United States v. Webb, 738 F.3d 638, 641-42 (4th Cir. 2013)(Floyd, J.).  The Ninth Circuit, likewise, later ruled that its holding in United States v. Miqbel, 444 F.3d at 1182, did not make reliance upon a § 3553(a)(2)(A) factor improper per se, explaining:

> [W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation.  The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator . . . .
>
> To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse.  The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community.  A history of, for example, drug-related offenses, combined with a drug-related offense underlying revocation, as is the case here, creates a greater likelihood that the violator will relapse into the same or similar criminal activity.  A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command.  Because the district court's trust in

the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to deter future criminal activity. Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.

United States v. Simtob, 485 F.3d 1058, 1062-63 (9th Cir. 2007)(Ezra, J.)(citations omitted).

The Tenth Circuit has not taken a position on whether it is error for a district court to rely on § 3553(a)(2)(A) for the revocation of a supervised release term.  See United States v. Miller, 608 Fed. App'x at 709; United States v. Chatburn, 505 Fed. App'x at 717.

Recent decisions by panels of this Court indicate that the Tenth Circuit has not definitively resolved the question of whether it is error for a district court to consider § 3553(a)(2)(A) factors when revoking an offender's supervised release. See United States v. Chatburn, 505 Fed. App'x 713, 717 (10th Cir. 2012); United States v. Lockhart, 421 Fed. App'x 877, 880 n.1 (10th Cir. 2011).

United States v. Miller, 608 Fed. App'x at 709 (quoting United States v. Douglas, 556 Fed. App'x at 750-51.

To the extent that the Court has relied on the factors set forth in § 3553(a)(2)(A) during sentencing hearings for violation of supervised release -- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense -- it was not in error.  The Court agrees with the result reached by a majority of the Courts of Appeals that a district court can consider the § 3553(a)(2)(A) factors in revoking supervised release.  A plain reading of § 3583(e) supports that interpretation.  As the Second Circuit has explained, the enumeration in § 3583(e) of specified subsections of § 3553(a) that a court must consider in revoking supervised release does not mean that it may not take into account any other pertinent factor.  See United States v. Williams, 443 F.3d at 47.  Further, in revoking supervised release, a district court must take into consideration, among other things, "'the nature and circumstances of the offense and the history and characteristics of the defendant,' as well as 'the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'"  United States v. Young, 634 F.3d at 239 (citations omitted).  Given the other factors that must be considered, "§ 3583(e) cannot reasonably be interpreted to exclude consideration of the seriousness of the releasee's violation."  United States v. Williams, 443 F.3d at 47-48.  "Indeed, the 'nature and circumstances of the offense,' a mandatory revocation consideration under § 3583, necessarily encompasses the seriousness of the violation of supervised release."  United States v. Young, 634 F.3d at 239.

The Sixth Circuit persuasively affirmed this view in United States v. Lewis, explaining that the omission of § 3553(a)(2)(A) from § 3583(e) cannot prohibit consideration of the factors enumerated in the former section, for the § 3553(a)(2)(A) factors are "essentially redundant with

matters courts are already permitted to take into consideration when imposing sentences for violation of supervised release." United States v. Lewis, 498 F.3d at 400.  The Sixth Circuit found additional support for this conclusion in United States policy statements:

> [I]n the official introduction to the policy statements regarding supervised release, the Sentencing Commission explains that "the sentence imposed upon revocation . . . [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision."  Thus, although violations of supervised release generally do not entail conduct as serious as crimes punishable under the § 3553(a) regime, revocation sentences are similarly intended to "sanction," or, analogously, to "provide just punishment for the offense" of violating supervised release.  Given that the three considerations in § 3553(a)(2)(A) are consistent with considerations already permissible for revocation sentences, the fact that § 3583(e) does not require that courts consider § 3553(a)(2)(A) does not mean that courts are forbidden to consider that factor, and the fact that a sentencing court does consider § 3553(a)(2)(A) is not error.

United States v. Lewis, 498 F.3d at 400 (citations omitted)(brackets in original).

For these reasons, the Court's consideration of, and reference to, the § 3553(a)(2)(A) factors in imposing a sentence for the violation of supervised release is not a procedural error that makes the sentence per se unreasonable.  Further, even under Fourth and Ninth Circuit precedent, the sentence was not in error, for the Court did not place undue weight or base its sentence "predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment."  United States v. Webb, 738 F.3d at 641-42.  Rather, the Court typically merely references the § 3553(a)(2)(A) factors in passing, and they are considered in conjunction with the eight § 3553(a) factors that § 3583(e) explicitly enumerates.  Finally, even if the Court had excluded or changed any reference to the § 3553(a)(2)(A) factors, the Court would have reached the same result, because there is some overlap between other § 3583(e) factors and the factors set forth in § 3553(a)(2)(A).  Further, it is difficult if not impossible to not consider the § 3553(a)(2)(A) factors in any sentencing, even if they are not expressly mentioned.

The Court concludes that the solution and best practice is to always keep in mind what Judge Posner and the Third Circuit have emphasized -- "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment."  United States v. Thompson, 2015 WL 151609, at *2 (quoting United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)(Fuentes, J.)).  Even if the Court considers respect for the law, just punishment, and the seriousness of the offense, it should be mindful that all it does should help the defendant ease back into society after a sometimes lengthy prison sentence, and not try to punish the defendant, although sometimes punishment -- incarceration -- is needed and expressly authorized to get the defendant to do what the Court and the USPO tell him or her to do.

The Court makes one other observation.  When Congress and the Court says the word "offense" at a violation hearing -- the question is whether it is referring to the underlying offense or to the violation.  The Court can consider both, but again, in meeting the goals of supervised

In particular, a district court must consider the policy statements in Chapter 7 of the Sentencing Guidelines before imposing a sentence for violations of the conditions of supervised release.  See United States v. Vigil, 696 F.3d at 1002; United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004)(Ebel, J.).  The Guidelines' commentary is generally an authoritative interpretation of the rules contained therein.  See Stinson v. United States, 508 U.S. 36, 38 (1993).  "[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely constitute advisory policy statements." United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Contreras-Martinez, 409 F.3d 1236, 1240 (10th Cir. 2005)(Seymour, J.)(citations and internal quotation marks omitted)).  See United States v. Hurst, 78 F.3d 482, 483 (10th Cir. 1996)(Brorby, J.)("[T]he policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G.[, including U.S.S.G. § 7B1.4(a),] are advisory rather than mandatory in nature"; a sentencing court simply considers them "in its deliberations concerning punishment for violation of conditions of supervised release.")(citations and internal quotation marks omitted).

"All discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum."  United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996)(Henry, J.)(citations

-------

release, the emphasis should be on the violation, and not on the underlying offense.  For example, when it considers the "nature and circumstances of the offense," it may consider how the defendant arrived before the Court, but its focus and emphasis in coming up with a disposition should be on the nature and circumstances of the new violation.  If the Court is going to consider the seriousness of the offense, the seriousness of the underlying offense is largely irrelevant, unless the violation is just the same thing as the underlying offense.  In any case, the focus and emphasis, if seriousness is considered at all, should be on the seriousness of the new violation.

and internal quotation marks omitted)).  While district courts are required to consider Chapter 7's policy statements in imposing sentences after revocation of supervised release, "[m]agic words . . . are not required to demonstrate fulfillment of this requirement."  United States v. Vigil, 696 F.3d at 1002 (quoting United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005)(McKay, J.)(citations omitted)).  "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence."  United States v. Penn, 601 F.3d at 1011.

## ANALYSIS

Continued compliance with a previous court order does not run awry of 18 U.S.C. § 3583(d).  The Court thus concludes that the imposition of continued restitution payment in a different criminal matter is a valid condition of supervised release.  The Court will accordingly overrule Charley's Objections and impose the condition.

**I.   CHARLEY MUST, AS A CONDITION OF SUPERVISED RELEASE IN THE PRESENT CASE, MAKE CONTINUED PAYMENTS AS THE COURT ORDERED IN UNITED STATES V. CHARLEY, NO. CR 10-1732 JB.**

Charley objects to the "conditions that he must, as condition of his Supervised Release, and under penalty of incarceration . . . 'continue to make payments towards the remaining balance of restitution owed in Case No.: 1:10CR001732-001 JB.'"  Objections at 1 (citing Conditions of Supervised Release).  In support of the Objection, Charley argues that "the Court does not have the authority under the Mandatory Victim's Restitution Act to make the prior restitution order a condition of Supervised Release in the instant case."  Objections ¶ 7, at 3. Charley contends that the Court lacks authority to impose the condition, because, "upon termination of his last Supervised Release term, the prior restitution order became a civil judgment against Mr. Charley with no greater priority than his other debt."  Objections ¶ 7, at 3. Accordingly, Charley argues, "while 18 U.S.C. § 3664 allows for a wide range of enforcement

options, it does not provide authority for the Court to order it as a condition of Supervised Release with the threat of incarceration and making it a higher priority than other debt in a subsequent case."  Objections ¶ 7, at 3.

In addition, according to Charley, 18 U.S.C. § 3563(b)(2) authorizes the Court only to "enter a discretionary condition of Supervised Release[] that requires as a condition of Supervised Release that the defendant make restitution to the instant victim or his family arising from current offense."  Objections ¶ 8, at 3.  In turn, Charley argues,

> it would appear that 18 U.S.C. § 3664(k) would require a defendant to inform the Court and the Attorney General of any material changes [in] economic circumstances.  Thus, an inquiry into the defendant's finances during his term of Supervised Release appears to be appropriate.  However, the prohibition upon incurring new credit charges or opening new lines of credit is not listed as a discretionary condition of Supervised Release pursuant to 18 U.S.C. § 3563(b)(2).

Objections ¶ 8, at 3-4.  Charley's argument then is essentially that the Court "does not have the authority to order as a condition . . . an outstanding debt in an old case . . . nor can the Court prioritize Mr. Charley's creditors with some being able to use the fear of incarceration to collect its debt."  Objections ¶ 9, at 4.

The Court disagrees with Charley's arguments.  While the Tenth Circuit has not considered the matter at length, other United States Courts of Appeals have examined the matter and reached conclusions inapposite to that of Charley's position.  See, e.g., United States v. Love, 431 F.3d at 482-83; United States v. Gill, 523 F.3d at 109-110.  Indeed, the Fifth Circuit has conclusively stated that, where "[t]he single, narrow issue in this case is whether a court can impose, as a condition of supervised release, that the defendant pay the unpaid restitution ordered as part of a sentence by another federal court in another federal case," 18 U.S.C. § 3583(d), "the catch-all provision[,] does allow a court to order compliance with a previously existing order, a

practice of which Congress has specifically indicated approval," <u>United States v. Love</u>, 431 F.3d

at 482-83.  The Second Circuit agreed, stating:

> Pursuant to 18 U.S.C. § 3583(d), a special condition of supervised release is permissible -- even if it relates to a prior crime -- provided that the condition is reasonably related to the defendant's history and characteristics, or is imposed to deter or punish the defendant, or to protect the community.  Here, the District Court determined that requiring [the Defendant] to continue making restitution payments to the victims of his prior offense constituted 'a very strong punishment . . . and also a requirement that [the Defendant] be accountable for his . . . crimes.'  In addition, the Court expressed concern that the victims of [the Defendant's] earlier fraud 'end up being paid back for the frauds that have been perpetrated upon them.'  In light of 'the history and characteristics of the defendant,' 18 U.S.C. § 3553(a)(1) -- including [the Defendant's] long history of fraudulent dealings, multiple convictions, and numerous victims -- the District Court's determination that, as a special condition of supervised release, [the Defendant] continue making restitution payments is consistent with Section 3583(d), and we see no error in the imposition of this special condition of supervised release.

<u>United States v. Gill</u>, 523 F.3d at 109-110 (internal citation omitted).  Future Supreme Court of

the United States Justice Sonia Sotomayor joined that Second Circuit per curiam decision.

Accordingly, the Court sees no sound reason to depart from the wisdom of the Second and Fifth

Circuit's logic, and concludes that it is lawful to impose the condition of continued restitution

payment in a different criminal matter against Charley's Objections.  <u>See</u> <u>United States v. Gill</u>,

523 F.3d at 109-110; <u>United States v. Love</u>, 431 F.3d at 483.  <u>See also</u> U.S.S.G. § 5D1.3(c)(4)

(recommending the imposition of a condition requiring the defendant to "comply[] with the

terms of any court order . . . requiring payments by the defendant for the support and

maintenance of any child or of a child and the parent with whom the child is living").

The Court's task does not end there, because, as the Second Circuit cautioned, the

imposition of a special condition, which relates to obligations arising from prior crimes, is still

only appropriate "provided that the condition is reasonably related to the defendant's history and

characteristics, or is imposed to deter or punish the defendant, or to protect the community"

under § 3583(d).   United States v. Gill, 523 F.3d at 109-110.   In this case, Charley argues,

Congress instead created a "litigation unit in the United States Attorneys' Office" that is aimed at

collecting the debt owed as restitution in the other case -- that is, Congress chose to address

uncollected restitution debt in a different, comprehensive manner.   See Tr. at 12:15-13:4

(Butcher).  Additionally, Charley asserts,

> more interesting, what has not been argued, even if the Court does have discretion
> to do this, what I've not heard from the probation office is how this relates to a
> 3553 factor, which all conditions of supervised release must do.  Other than
> saying it's the same victim and same defendant.

Tr. at 14:3-10 (Butcher).  Charley also argues that Congress has "specifically dealt with" this

situation

> when they created the financial litigation unit, and you noticed this turn[ed] into a
> civil debt and given this financial litigation unit all the civil tools to enforce it.  I
> would say that's a comprehensive scheme that no longer gives this Court its
> discretion to impose this [as] a condition of supervised release.   And more
> importantly, it does not fit into any 3553(a) factors. . . .

Tr. at 17:1-14 (Butcher).  The United States disagrees with Charley, providing that "the Court

can and should include as a discretionary factor in the defendant's . . . sentencing."  Tr. at 17:20-

25 (Ramirez).  In support, the United States argues: "[I]t is related [to the] 3553 factors in that it

demonstrates the history and characteristics of this defendant . . . this defendant in particular with

this victim . . . ."  Tr. at 18:9-19 (Ramirez).  At the hearing, the Court indicated that on the issue

of

> whether I can do it, I think if I were to go the defendant's way, I would be
> splitting with the Fifth and Second Circuit.  And I think based on the Fifth and
> Second Circuit decisions, and also 3614, which says you can imprison[]
> defendants for failure to pay restitution . . . I just don't see a good reason why I
> should break with the Second and Fifth Circuits.

Tr. at 27:1-10 (Court).  Further, because the crimes at issue involve the same Defendant and

victim, "these crimes are . . . about as related as crimes get when you have two of them.  And so

I think whatever payment in the prior case is reasonably related to this offense."  Tr. at 27:11-15 (Court).  The Court maintains its inclination at the hearing where it imposed as a condition of supervised release the continued payment of restitution in the related matter, but did not impose a fine.  See Tr. at 39:5-10; id. 40:2-3 (Court).  The Court is satisfied that where, under § 3553(a)(1), "the history and characteristics of the defendant" in this case involve multiple violations against the same victim, an order of continued restitution payment to that victim -- as was ordered in a prior criminal matter -- is a condition reasonably related to the Charley's history and characteristics, and is thus appropriate under § 3583(d).

**IT IS ORDERED** that Defendant's Objection to Proposed Conditions of Supervised Release, filed April 16, 2015 (Doc. 29), is overruled.  Defendant Charley must, as a condition of supervised release in this case, make continued restitution payments in United States v. Charley, No. CR 10-1732 JB.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
    United States Attorney
Elaine Y. Ramirez
    Assistant United State Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

John Van Butcher
    Assistant Federal Public Defender
Office of the Federal Public Defender
Albuquerque, New Mexico

*Attorney for the Defendant*